THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BILL TEJANO,

        Plaintiff,

v.

GENERAL ELECTRIC COMPANY and
METROPOLITAN LIFE INSURANCE
COMPANY,

        Defendants.

NO. C08-5243RBL

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS MATTER having come on before the above-entitled Court, this Court hereby enters the following Findings of Fact and Conclusions of Law.

## I.     FINDINGS OF FACT

**A.   General and Procedural Background.**

1. Plaintiff Bill Tejano was employed by GE beginning on October 16, 1978. Plaintiff ceased working for GE on January 18, 1991, on account of a disability and claimed disability benefits under the GE disability plan sponsored by GE and funded by MetLife (the "Plan"). He was paid benefits from July 27, 1991, to December 4, 1992. Plaintiff filed the instant lawsuit seeking a declaratory judgment that he is entitled to no-cost life insurance coverage under a life insurance plan.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 1

2. Plaintiff filed his lawsuit in Pierce County Superior Court, Cause No. 08-2-06391-2. Defendants removed the matter to this Court on April 21, 2008, on the ground that the Plan is governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461.

3. Plaintiff admits that he paid no premiums for life insurance coverage under the Plan, but alleges that he is entitled to continued no-cost life insurance coverage. He cites an April 23, 1993 letter, purportedly from GE, stating that he had life insurance coverage up to age 65 "***because [he] qualified as totally disabled***." *See* Exhibit A to Plaintiff's Complaint. The letter imposed an express condition on Plaintiff's entitlement to benefits: "Your life insurance will continue for the full amount until you're age 65 ***if you furnish proof annually of your total disability's continuation***. Metropolitan Life Insurance Company will request this proof when necessary." *Id.* Plaintiff does not claim that he provided such proof to MetLife after December 1992.

4. MetLife's electronic claims database of old claims shows the statistical information related to Plaintiff's claim. *See* Exhibit A to Declaration of Michael Hall in Support of MetLife's Motion for Summary Judgment. This document indicates, among other things, that MetLife started paying Plaintiff disability income benefits on July 27, 1991. This document also indicates that the claim file itself was contained in a paper file and not maintained in electronic format. *Id.*

5. MetLife's database confirms that MetLife stopped paying Plaintiff benefits as of December 4, 1992, citing "Claim End Reason" as "60." Number 60 is MetLife's code for "not totally disabled all occupations." *See* Hall Decl. at ¶ 3. Plaintiff does not allege -- and there is no documentary evidence to indicate -- that he ever appealed the December 1992 denial of benefits.

6. Plaintiff claims to recall receiving benefits under the Plan for "a month or two after his injury." *See* Declaration of Bill Tejano Regarding Income, p. 1, ll. 19-21. Plaintiff

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 2

does not allege, nor did he submit any evidence that would show that he continued to receive disability benefits from MetLife after December 4, 1992.

7. Pursuant to MetLife's long-standing document retention policy, records are retained for eight years after a claim has been resolved and closed, unless a legal hold is imposed in anticipation of litigation. *See* Declaration of Brian Merritt in Support of Defendants' Motion for Summary Judgment at ¶ 5. More recently, with respect to some claims, MetLife has adopted a policy of imaging all paper documents. Where documents are imaged, such images are deleted eight years after a claim is resolved and closed. The underlying paper documents are deleted thirty days after the document has been imaged. Claims by GE employees are not yet subject to the imaging policy. Therefore, consistent with MetLife's document retention policy, Plaintiff's claim documents would have been maintained for no longer than eight years after he was deemed no longer totally disabled -- December 4, 1992 -- so no later than December 2000. *Id.*

8. Plaintiff concedes that he did not contact MetLife about either his disability benefits or life insurance coverage until December 2006, when he sent a letter inquiring about the amount of life insurance coverage he had under the Plan. *See* Declaration of Bill Tejano at p. 2, ll. 19-22. This was fourteen (14) years after the date MetLife deemed him not totally disabled and ceased paying his disability benefits. Under the document retention policy described above, MetLife no longer had Plaintiff's claim file. Accordingly, in a February 1, 2007 letter, MetLife informed Plaintiff that it had no plan records relating to his inquiry, and sought additional information in order to help locate the relevant information. *See* Exhibit B to Complaint. There is no allegation or evidence that Plaintiff ever provided that information to MetLife.

9. Defendants moved for summary judgment arguing, *inter alia*, that Plaintiff's failure to challenge the denial of his disability benefits (and, therefore, continue his entitlement to no-cost life insurance coverage) prejudiced Defendants' ability to prepare their

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 3

defenses to coverage. This Court denied the motion. The Court directed Plaintiff to provide documents supporting his claim to MetLife so that MetLife could conduct a review of those documents to determine whether Plaintiff was continuously and totally disabled beyond December 4, 1992. Plaintiff then provided MetLife with 252 pages of documents (TEJ 1-252), and subsequently confirmed that those were all of the documents he believed supported his claim.

10. MetLife then reviewed the records provided. On September 23, 2009, MetLife issued a letter denying Plaintiff's claim. MET 1-4. The letter detailed the records relied upon and the rationale for MetLife's decision. The letter also informed Plaintiff that he could request administrative review of the denial, and that he had to exhaust these administrative remedies prior to seeking redress with this Court. Plaintiff confirmed that he would not be seeking an administrative appeal.

11. Due to the destruction of Plaintiff's claim file, the administrative record for this matter consists of Plaintiff's documents, TEJ 1-252, records provided by MetLife, MET 1-194; and the records in the Court's file.

12. The following Findings of Fact and Conclusions of Law relate to this Court's review of MetLife's December 4, 1992 denial of disability benefits, and its September 23, 2009 affirmation of that decision.

**B.    Review of MetLife's Denial of Benefits.**

1. The Plan contains two definitions of disability. The first, which applies for up to the first year of disability, requires the employee to prove that he is "[u]nable to perform the duties of [his] own job." After one year of disability, the participant is required to prove that he is "[u]nable to perform any job for which [he is] reasonably suited by means of education, training or experience." MET 100.

2. The Plan unambiguously confers discretionary authority on MetLife as the Plan Administrator to make benefits determinations and construe Plan terms. Specifically, the Plan provides:

> The plan administrator, or a designated third party, such as the claims administrator or plan insurer, has the authority and responsibility to interpret the provisions of respective plans. The nature of this authority and the discretion afforded these administrators is detailed in the applicable plan documents which should be consulted in the event of a claim dispute.

MET 177.

3. Plaintiff initially injured his right shoulder in an on-the-job accident on November 13, 1989. TEJ 166. After successfully participating in a rehabilitation program, Plaintiff returned to work for GE on November 13, 1990. TEJ 167. On January 13, 1991, Plaintiff received another injury to his right shoulder. TEJ 172. MetLife's electronic claims database shows Plaintiff's last day worked was January 18, 1991. *See* Declaration of Michael Hall in Support of MetLife's Motion for Summary Judgment, at Exhibit A.

4. Plaintiff was referred to E. Bruce Hilton, M.D. TEJ 172. Dr. Hilton kept regular notes of Plaintiff's progress. By May 20, 1992, Dr. Hilton observed that Plaintiff was having only some episodes of pain, and that Plaintiff continued in his training program and part-time teaching. TEJ 182.

5. Dr. Hilton's July 21, 1992 notes show that Plaintiff "continue[d] to work and go to school at Clover Park [Vocational School]." TEJ 181. Plaintiff confirmed with Dr. Hilton his plan to begin teaching in September 1992 -- six hours a day, four days a week. *Id.* Dr. Hilton's notes confirm that Plaintiff returned to work the week of September 23, 1992, and Dr. Hilton recommended that Plaintiff continue teaching. TEJ 180. As of November 23, 1992, Dr. Hilton confirmed that Plaintiff could continue his teaching job. TEJ 178.

6. As noted above, MetLife stopped paying Plaintiff disability benefits on December 4, 1992. As Plaintiff had not yet applied for disability benefits through the Social

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 5

Security Administration ("SSA") (which he did not do until February 1994), there was no determination of disability from the SSA at the time MetLife deemed Plaintiff "not totally disabled" in December 1992.

7. Other records Plaintiff provided confirm that he was not totally disabled. For example, the record shows that Plaintiff continued teaching 24 hours per week from September 1992 until June 30, 1993. TEJ 152, 168-69, 177. A June 30, 1993 assessment by Plaintiff's other treating physician, Dr. Richard Johnson confirmed that "[Plaintiff] is employable on a regular, continuous basis." *See* TEJ 154. According to documents Plaintiff later supplied to the Social Security Administration, from September 1992 until June 30, 1993, Plaintiff's monthly income was greater than what he would have received in disability benefits from MetLife. *See* TEJ 48, 61, 66-69.

8. Other medical records Plaintiff provided support the conclusion that Plaintiff was not totally disabled as defined by the Plan as of December 4, 1992. A December 8, 1992 independent medical exam ("IME") confirmed no atrophy in Plaintiff's right arm or hand. A December 14, 1992 IME presented the same findings. *See* TEJ 165-76. An IME conducted more than two years later on March 21, 1995, reported a decreased grip of Plaintiff's right hand. Dr. Johnson had, however, confirmed as of April 1991, that Plaintiff's grip strength was satisfactory. *See* TEJ 101-110; TEJ 146-47.

9. Plaintiff refers to the April 23, 1993 letter from GE noting that he was "totally disabled." Yet Plaintiff knew that at the time he was -- and had been for more than seven months prior -- working six hours a day four days a week as a vocational instructor. Plaintiff did not, however, contact MetLife to clarify the status of his disability.

10. Plaintiff did not apply for Social Security Disability Insurance ("SSDI") until February 22, 1994. *See* TEJ 91-94. In his application for SSDI, Plaintiff confirms that he "became unable to work because of [his] disabling condition on June 1, 1993." *See* TEJ 91. The SSA denied Plaintiff's application for SSDI, finding that Plaintiff's condition was not

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 6

severe enough to keep him from working, specifically citing that Plaintiff worked as a teacher from September 1992 to June 1993. *See* TEJ 87-89.

11. Plaintiff sought reconsideration of this decision. In response, the SSA had Plaintiff's claim independently reviewed by a physician and disability examiner. *See* TEJ 72-74. Based on this and additional information provided by Plaintiff, the SSA affirmed the original denial of SSDI benefits. *See* TEJ 72. The SSA reasoned that "[a]lthough you do have restrictions on your physical activities due to your condition, the evidence shows you remain capable of your past work as an instructor. Accordingly, no period of disability can be established." *Id.*

12. Although Plaintiff did eventually receive SSDI benefits, that decision was based on the SSA's determination that Plaintiff had not had gainful employment since his initial injury on November 13, 1989. *See* Exhibit B to Decl. of Bill Tejano. This is contrary to the other records Plaintiff provided, establishing that he returned to work at GE between November 1990 and January 1991, and then worked as a vocational instructor from September 1992 until June 30, 1993.

13. Plaintiff claims that his receipt of Workers' Compensation benefits further prove that he was totally and continuously disabled as required by the Plan. Yet, a February 26, 2009 letter from the Washington State Department of Labor & Industries confirms that Plaintiff was not deemed disabled until May 10, 1995 -- more than two years after the initial denial of benefits.

14. The records upon which MetLife's decision was based conclusively establish that Plaintiff was not continuously and totally disabled from December 4, 1992 onward as required to remain eligible for no-cost life insurance. *See* the Plan, MET 100; *see also* April 23, 1993 letter (Plaintiff required to furnish proof of his "total disability's continuation"). Thus, Plaintiff's life insurance coverage lapsed and he is not entitled to coverage.

## II. **CONCLUSIONS OF LAW**

1. The Plan is governed by ERISA. *See* 29 U.S.C. § 1002 (1).

2. Plaintiff has failed to exhaust his administrative remedies as required by ERISA. *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 983 (9th Cir. 2005); *Amato v. Bernard*, 618 F.2d 559, 567-68, 569 (9th Cir. 1980) (affirming requirement that plaintiff exhaust administrative remedies before district court would adjudicate the complaint). There is no evidence that Plaintiff appealed the December 1992 denial of disability benefits, and the record shows that Plaintiff chose not to appeal the September 23, 2009 affirmance of that decision. His claims are therefore barred and are hereby dismissed. This procedural bar notwithstanding, Plaintiff's claim also fails substantively.

3. Because MetLife has discretionary authority to interpret the terms of the Plan and determine eligibility for benefits, the abuse of discretion standard of review applies to Plaintiff's claims and to MetLife's determination that Plaintiff was not disabled as required for continued no-cost life insurance coverage. *Metropolitan Life Ins. Co. v. Glenn*, ___ U.S. ___, 128 S. Ct. 2343, 2348, 171 L. Ed. 2d 299 (2008); *Abatie v. ALTA Health & Life Ins. Co.*, 458 F.3d 955, 963-65 (9th Cir. 2006).

4. Although, as evaluator and payor of benefits, MetLife has a structural conflict as a matter of law, *Glenn*, 128 S. Ct. at 2348, such conflict should be given no more than de minimus weight in this Court's review of MetLife's decision. Accordingly, the "only issue is whether, on the evidence considered, the administrator's determination was reasonable." *Seitles v. UNUM Provident*, 2009 WL 3162219 *8 (E.D. Cal. Sept. 29, 2009) (citation omitted).

5. Claims administrators abuse their discretion if they make a decision without any explanation, construe provisions of the plan in a way that conflicts with the plain language of the plan, fail to develop facts necessary to make the determination, or base the decision on an erroneous view of the law and/or "clearly erroneous" findings of facts.

*Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 960 (9th Cir. 2001). In the ERISA context, decisions which are ***directly*** contrary to evidence in the record are not necessarily an abuse of discretion. *See Taft. v. Equitable Life Ins. Soc.*, 9 F.3d 1469, 1473 (9th Cir. 1993) *abrogated on other grounds by Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 865 (9th Cir. 2008). Abuse of discretion in this context means that the entire record leads to the firm conviction that a mistake has been made by the plan administrator. *Boyd v. BertBell/Pete Rozell NFL Players Ret. Plan*, 410 F.3d 1173, 1179 (9th Cir. 2005).

6. Under the deferential abuse of discretion standard, the district court's review is limited to the record that was before the Plan Administrator when it made its benefits determination. *See*, *e.g.*, *Montour v. Hartford Life & Acc. Ins. Co.*, 2009 WL 2914516 *7 (9th Cir. Sept. 14, 2009). Thus, this Court limits its review in this matter to Plaintiff's documents, TEJ 1-252, records provided by MetLife, MET 1-194; and the records in the Court's file.

7. MetLife's termination of Plaintiff's disability benefits in December 1992 would have been reasonable and supported by substantial evidence. Among other things, Plaintiff was working at the time his benefits were originally denied in December 1992. In addition, the complete absence of any evidence that Plaintiff appealed the termination of benefits, as well as Plaintiff's failure to allege that he appealed the termination of benefits raises the reasonable inference that Plaintiff did not dispute MetLife's claim position. MetLife was bound to conduct a full and fair review of Plaintiff's claim had Plaintiff timely appealed.

8. The September 23, 2009 affirmance of the 1992 termination of benefits was also reasonable and supported by substantial evidence. The post-December 1992 documents show that not only did Plaintiff's doctors confirm that he could work -- he actually did work six hours a day for four days a week. This was for a period of approximately nine months. Based on the records Plaintiff provided, he was not disabled as required by the Plan and

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 9

therefore not entitled to continued no-cost life insurance coverage. *See Seitles*, 2009 WL 3162219 *8 ("The Ninth Circuit has recognized repeatedly that merely because a person has a true medical diagnosis does not by itself establish a disability." (Internal punctuation marks omitted)) citing *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004) (upholding the denial of the plaintiff's benefits claim not because the plaintiff failed to demonstrate the existence of a medical condition but because the plaintiff was unable to prove that her physical disability kept her from performing her job) *overruled on other grounds by Abatie*, 458 F.3d 969.

9. MetLife's determinations are consistent with -- not contrary to -- the evidence before it. This includes records from Plaintiff's treating physicians, several IMEs, and Plaintiff's own reports to the SSA. The only decision that suggests that Plaintiff was totally and continuously disabled was the SSA's grant of benefits on May 19, 1995, after an administrative appeal. However, that decision was based on the erroneous finding that Plaintiff had not worked since November 1989. Moreover, an ERISA administrator is not required to defer to the SSA. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) (acknowledging the different standards for disability determinations for ERISA plans as compared to Social Security awards).

10. The Plaintiff has failed to carry his burden of proving a total disability until age 65. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999) (plaintiff carries the burden of proving a total disability and entitlement to benefits based upon the evidence contained in the administrative record). He is therefore not entitled o no-cost life insurance under the Plan. In addition, given Plaintiff's failure to contact MetLife or GE about his life insurance coverage until fourteen years after the initial denial of benefits, Defendants have been actually and materially prejudiced in preparing their defenses to coverage in this matter. Nevertheless, substantial evidence in the record supports MetLife's claims determination.

11. For these reasons, under the relevant authority, MetLife did not abuse its discretion in denying Plaintiff's claim.

12. Plaintiff's request for a declaratory judgment is denied and his claim is dismissed.

DONE IN OPEN COURT this 26th day of October, 2009.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE